IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TERESA BLUBAUGH** <br> 1614 Belvue Drive <br> Forest Hill, Maryland  21050 | * <br><br> * | |
| **Plaintiff,** | * | |
| v. | * | Civil Action No. _____ |
| **HARFORD COUNTY SHERIFF'S OFFICE,** | * <br><br> * | |
| <u>Serve on:</u> | * | |
| Hon. Jeffrey R. Gahler <br> Sheriff <br> Harford County Sheriff's Office <br> 45 South Main Street <br> Bel Air, Maryland  21014, | * <br><br> * <br><br> * | |
| **L. JESSE BANE** <br> **Former Sheriff of Harford County** <br> **Office of the Town Administrator** <br> **Town of Bel Air Maryland** <br> 39 North Hickey Avenue <br> Bel Air, Maryland 21014, | * <br><br> * <br><br> * <br><br> * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Teresa Blubaugh, by and through the undersigned attorney, hereby sues the governmental Defendant Harford County Sheriff's Office (hereinafter referred to as "Employer"), and L. Jesse Bane, the former Sheriff of Harford County, for employment discrimination on account of gender and for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e, *et*

*seq.*; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Maryland Fair Employment Practices Act ("MFEPA"), § 20-606(a)(1)(i) of the State Government Article, Md. Code.

Plaintiff contends that, because of her gender, Defendant Employer and Defendant Bane subjected her to harassment in the work place, transforming her work space into a hostile work environment and subjecting her to such differential treatment as was calculated to secure her resignation from her position as a corporal within the Harford County Sheriff's Office.  This pattern of differential treatment culminated in two separate efforts to terminate her position for cause, both efforts unfounded, with one effort resulting in formal trial board proceedings in which an otherwise impartial body of police officials from outside Harford County made a recommendation to retain Plaintiff in her position.  For reasons of her gender, Defendant Bane rejected the recommendations of the trial board and directed that Plaintiff be terminated from her position for cause.  His decision to terminate Plaintiff's employment for cause was upset by a determination of the Circuit Court of Harford County, finding the action of Defendant Bane and the Defendant Employer arbitrary and capricious, and the Defendant Employer was directed to reinstate Plaintiff.  However, by this time, the mistreatment that the Employer and Defendant Bane had directed toward Plaintiff had taken its toll, causing her such distress that she could not medically return to the workplace.  As a consequence of the unlawful discrimination and retaliation to which she was subjected, Plaintiff was caused to lose not only her position but her capacity to perform a job to which she had long aspired.

In support of this action, which she prays in relevant part be tried before a jury, Plaintiff alleges as follow:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action in accordance with 28 U.S.C. §§ 1331 and 1343, in that this action, in part, arises under the Constitution of the United States and the laws of the United States and asserts a violation of civil rights secured by the United States Constitution and by federal law.

2. To the extent that this Court has original jurisdiction as to one or more of the claims in this action, as is supported by the allegations set forth in Paragraph No. 1, and that such claims brought by the Plaintiff under State law are so related to those claims in this action within the Court's original jurisdiction that the State law claims form part of the same case or controversy under Article III of the United States Constitution, this Court has supplemental jurisdiction over such State law claims in accordance with 28 U.S.C. § 1367.

3. Venue is proper in this Court, in accordance with 28 U.S.C. § 1391(b), because the Plaintiff's causes of action arose within the District of Maryland. In addition, there is no other district within which this action may be brought, and the Defendant governmental entity is located in the State of Maryland, and the individual defendant resides within that State as well.

## THE PARTIES

3. Plaintiff Blubaugh is a White female who, at the time of the events recounted herein, was an employee of the Defendant Employer. She resides in the State of Maryland in Harford County.

4. Defendant Employer is an office created under authority of Article IV, Section 44 of the Maryland Constitution to perform the common law duties that sheriffs have provided in Maryland for the purpose of securing the peace. The headquarters office of the Defendant Employer is located at 45 South Main Street in Bel Air, Maryland. In its capacity as a creation of State law to fulfill the duties of Sheriff for Harford County, Defendant Employer is subject the

3

requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.*, and MFEPA, § 20-606(a)(1)(i) of the State Government Article, Md. Code.

5. Defendant Bane is a former Sheriff of Harford County.  For the period of time relevant to the allegations of this lawsuit, he was the Sheriff of Harford County.  Defendant Bane resides and works within Harford County, Maryland.  He is sued in his individual capacity for his own acts and omissions relating the claims asserted by Plaintiff.  For purposes of this action, Defendant Bane was a person acting under color of State law within the meaning of those terms as provided in 42 U.S.C. § 1983.

## BACKGROUND FACTS

6. Plaintiff, a White female, was employed by the Harford County Sheriff's Office, Defendant Employer, from 2003 until she was terminated for not being medically able to continue in her position effective April 1, 2015.  At the time her tenure with the Defendant Employer ended, she had attained the rank of Corporal.

7. Plaintiff came to the Defendant Employer following a military career that provided her with grounding in law enforcement.  Since the time she was a girl growing up in Alexandria, Louisiana, the Plaintiff wanted to be a police officer.  She joined the military to gain experience, and, when she was advised that height requirements precluded an assignment for her with the military police, she instead joined the U.S. Army in the field of counterintelligence.  She served with distinction overseas in deployments to Korea, then on to Fort Bragg, North Carolina, and also to Bosnia.  She left the military with an honorable discharge in 1999, ultimately moving to Maryland.

8. After securing employment with the Defendant Employer as a correctional officer at the Harford County Detention Center in 2003, she pursued her law enforcement aspirations by

4

commencing the program at the County's law enforcement academy in October 2004, graduating second in her class in April 2005.

9. After completing field training, the Plaintiff was assigned to the midnight shift at the County's northern precinct in August 2005. From August 2005 to December 2005 (five months), the Plaintiff wrote the most SERO's (Safety Equipment Repair Orders) in the history of the Sheriff's office in one year's time. In 2006, she was the first female in the history of the Sheriff's Office to win the DUI award. She received the Maryland State Police DUI award, the Harford County DUI award, and also an award from Mothers Against Drunk Driving (MADD). To this date, no other female has earned any of the DUI awards. That year, she was also in the top five for issuing traffic citations in the agency.

10. In 2006, Plaintiff became a member of the Honor Guard for the Sheriff's Office. In 2007, she received the Maryland State Police DUI award for a second year, the Harford County DUI award, and the MADD award again as well. The Office's traffic sergeant asked her to become a Standardized Field Sobriety Test (SFST) instructor because of her passion for eliminating DUI's, and she attended Baltimore County's training academy for SFST instructor. While assigned to patrol, she was also selected as a Field Training Officer.

11. In 2008, the Plaintiff was assigned to the Criminal Investigation Division in the Property Crimes unit. While assigned to the property crimes unit, she consistently had one of the highest clearance rates for burglary investigations. The national average for clearing burglary investigations was 18%. Plaintiff's average was over 40%. She received a letter of commendation due to her high rate in clearing cases. The property crimes unit as a whole also received a unit citation for the high clearance rate of its cases.

12. In 2009, the Plaintiff was assigned to the Child Advocacy Center ("CAC") to investigate child sexual abuse. Becoming a detective at the CAC had been a goal of the Plaintiff

5

since she was in the academy. She held a 100% confession rate, and she carried the highest case load among her peers.

13. In February 2011, Plaintiff was promoted to the rank of Corporal after her first attempt at promotion. At the time of her promotion, she then held the most awards of any female in the history of the Sheriff's Office.

14. Until February 2011, the Plaintiff's experience with the Sheriff's Office had been generally positive. That experience changed with her next assignment. At that time, the Plaintiff was assigned to Shift 3 in the County's Northern Precinct under the supervision of Sgt. Ian Loughran, a White male.

15. From the beginning in this assignment, the Plaintiff was subjected to harassment, a hostile work environment, and unfair treatment by Sgt. Loughran because she is female. Sgt. Loughran has made inappropriate statements to her based upon her gender. For example, in June 2011, he told her that it looks bad for her to be hanging out with the guys because she is female. Sgt. Loughran undermined her on a regular basis, spoke negatively about her to her subordinates, and repeatedly tried to accuse her of doing things wrong when others confirmed that the Plaintiff had done nothing improper. She contends that Sgt. Loughran did not treat the male supervisors in this demeaning and professionally limiting way.

16. The Plaintiff first complained about the unequal treatment on June 28, 2011 to Lt. Joe Vanseeters. She complained again on August 1, 2011. The harassing and hostile treatment continued despite her complaints, so she complained to Captain Keith Warner on August 16, 2011, and again on August 30, 2011. She eventually complained to the Defendant Bane himself on May 23, 2012.

17. In March 2012, the Plaintiff was notified that the Sheriff's Office was conducting an Internal Affairs investigation against her relating to remarks attributed to her purportedly

encouraging her colleagues to support litigation against the Office. She denied the assertion, and the only corroboration from anyone present at the roll call advising she had made the statements was Sgt. Loughran, who initiated the complaint. She believes that this investigation initiated by Sgt. Loughran was in retaliation for her continued complaints against him of gender-based harassment.

18. On June 4, 2012, the Plaintiff was notified of another Internal Affairs investigation complaint that was filed against her in reference to a domestic violence call to which she had responded on April 26, 2012.

19. On July 6, 2012, the Plaintiff was suspended for the allegations of the first Internal Affairs investigation of which she was notified in March 2012. On July 11, 2012, she was notified of another Internal Affairs investigation filed against her alleging that she had made untruthful statements during the first Internal Affairs investigation interview, in reference to the case of which she was notified in March 2012.

20. On August 2, 2012, she was notified that the allegations underlying the first internal investigation arising from the March 2012 notification were "unfounded" even though officials of the Sheriff's Office had told her, on July 6, 2012, that the allegations were sustained and served as the basis for an earlier suspension of the Plaintiff. She was also told that the Internal Affairs investigation for allegedly making untruthful statements during the first Internal Affairs investigation whose allegations were "unfounded," of which she was notified about on July 11, 2012, was nonetheless sustained, and that officials of the Defendant Employer were seeking her termination. As was her right, Plaintiff immediately has requested a trial board adjudicatory hearing, to contest any action to terminate her employment.

21. The Plaintiff contends that the disciplinary actions undertaken against her, including the actions for her termination, arise from her complaints to the Defendant Employer regarding

7

past assertions of gender discrimination against Sgt. Loughran and others within the Defendant Employer.

22. Since July 6, 2012, and the subsequent filing of her original charge of discrimination against her employer with the United States Equal Employment Opportunity Commission ("EEOC") on or about August 8, 2012, the Plaintiff has been transferred to three different locations and her hours have been changed five times, causing further stress and hardship.  Since the time she filed her EEOC discrimination charge, several females, current employees and past employees, have approached her and told her how brave she was to follow through with her EEOC charge.  Each of these females shared with her their stories of gender discrimination by the Harford County Sheriff's Office as well. The current employees were reluctant to file complaints because they were afraid of retaliation after watching what the Plaintiff had endured.

23. The trial board proceeding relating to Plaintiff's proposed termination by Defendant Bane arises from a domestic violence matter as to which she responded on or about April 26, 2012.  When the Plaintiff responded to the call, two other deputies (both male) were already on the scene, both having arrived before her.  The contention of the Defendant Employer was that the female victim placing the 911 call had been subjected to a domestic assault by her husband, had been significantly injured, and that the Plaintiff was guilty of neglect and deficient performance, among other things, by not submitting a written report of the incident and by responding only to remain on the scene to assure the victim's safety while she chose to leave the premises.  In administratively handling what it considered a breach of performance, the Defendant Employer had disciplined just one of the two male deputies with the Plaintiff responding to the call for assistance to only a verbal counseling while offering no discipline at all to the other male officer.

24. As a proposed punishment for the Plaintiff, the Defendant Employer initially offered her a demotion, a letter of reprimand, and reclassification of her position from law enforcement to a position as a correctional officer. In addition, the Defendant Employer had asked that she drop her then pending EEOC complaint against the employer. The Defendant Employer told Plaintiff that if she should decline the offered discipline and take her case to a trial board, it would seek her termination.

25. The trial board on the Defendant Employer's charges for termination arising from the incident of April 26, 2012, convened on March 14, 2013 and concluded on March 15, 2013. The trial board proceeded in the absence of any testimony from the victim in question. The Defendant Employer contended that the Plaintiff had violated its domestic violence policy by not preparing a report of the incident. However, its own witnesses allowed that this policy did not require a written report on every domestic violence call, that, in the absence of evidence of a physical altercation, visible signs of injury, or indication from the victim that she had been injured from violence by her partner, not only was the policy *not* violated but prevailing practice of the office required no report at all. Indeed, the Sheriff Office's own witnesses, the other officers who responded to the call with the Plaintiff confirmed that neither of them observed any indication of domestic violence, saw any mark of injury on the victim, nor heard any suggestion of a physical altercation from any of the persons present, including the victim. Indeed, the first officer reporting to the scene indicated that, if there was any responsibility for providing a report on the call, that decision was his to make, not the determination of the Plaintiff.

26. While the hearing panel at the trial board sustained a ground for disciplining Plaintiff, the panel nonetheless recommended that the Plaintiff should receive only a written reprimand, lose two days leave, and be referred to domestic violence training. Nothing in the

recommendation sustained any action to suspend, demote, or terminate the Plaintiff or to reclassify her position.

27. Rejecting the recommendation of the trial board panel, by letter dated April 25, 2013, Defendant Bane, acting in his capacity as head of the Defendant Employer, made the decision "to increase the recommended penalty of the hearing board" to terminate the Plaintiff's employment.

28. In accordance with Maryland law, Plaintiff timely commenced a proceeding on judicial review in the Circuit Court of the State of Maryland for Harford County. That proceeding was styled *In re Petition of Teresa Blubaugh*, Case No. 12-C-13-1291M. In a 16-page written decision, issued on June 2, 2014, retired Circuit Judge Robert N. Dugan concluded as follows:

> The decision of the Sheriff to terminate the Petitioner [Plaintiff] was not based on substantial evidence. It was based on assumption and conjecture. The decision was arbitrary and capricious.

The Defendant Employer took no appeal from the decision, which finally adjudicated the matter between the parties.

29. As a result of the decision in *In re Petition of Teresa Blubaugh*, the Defendant Employer reinstated Plaintiff to her earlier position and restored to her the pay she had lost since Defendant Bane's decision on April 25, 2013 to terminate Plaintiff's employment.

30. Because of the harassment and stress created by the hostile work environment established around her by Defendant Employer and Defendant Bane, the Plaintiff was medically unable to resume her career with Defendant Employer. Effective April 1, 2015, the Defendant Employer terminated the Plaintiff's reinstated employment because she was no longer able to perform the job.

31. On or about August 8, 2012, Plaintiff first met with EEOC to initiate the process for filing a charge of discrimination on the basis of gender and retaliation.  She further communicated with the EEOC to amend the charge of discrimination and further inform the investigators regarding all aspects of the allegations presented in this Complaint, including the circumstances of the trial board proceeding, the subsequent termination of employment, and her reinstatement following the decision of the Circuit Court for Harford County in *In re Petition of Teresa Blubaugh*.  The EEOC investigation of the initial and amended charge of discrimination that the Plaintiff filed with the EEOC has considered all the allegations incorporated within this Complaint.  On or about March 31, 2015, in a mailing postmarked April 1, 2015, not received by the Plaintiff until April 3, 2015, the EEOC issued to Plaintiff a right to sue letter.

32. Plaintiff accordingly has commenced this action timely within the terms of the notice of her right to sue previously issued.

## CAUSES OF ACTION

### COUNT I
### (Gender Discrimination and Retaliation in Violation of Title VII and MFEPA)
### (Against Defendant Employer)

33. Plaintiff realleges the assertions made in paragraphs 1 through 32 as if these paragraphs had been fully set forth herein.

34. Within a timely period in 2012, on or about August 8, 2012, Plaintiff filed with the EEOC a charge of employment discrimination on account of gender, and for unlawful retaliation, in accordance with the procedural requirements Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., and consistent with the provisions of MFEPA.

35. In her submitted charge(s) of discrimination or through subsequent communications with the EEOC considered by the EEOC in its investigation of the submitted charge(s), Plaintiff complained about issues of gender discrimination and unlawful retaliation, as are set forth

herein, involving the Defendant Employer's proposed disciplining of Plaintiff, leading to her termination of employment, her later reinstatement to her position, and ultimately her inability for medical reasons to continue that employment.

36.  Defendant Employer has acted unlawfully against Plaintiff, in violation of Title VII and MFEPA, in that officials of the Defendant Employer, as is set forth herein, (a) have subjected the Plaintiff to differential treatment in the form of harassment because of her gender, calculated to secure her resignation from the Defendant Employer, (b) have created a hostile work environment calculated to bring about the same result; and (c) have initiated and pursued an unfounded and otherwise unjustified disciplinary action to force the termination of her employment with the Defendant Employer.  In so proceeding against the Plaintiff, these actions were taken, in part, especially the action to terminate her employment, after she had engaged in activity protected by Title VII, *e.g.,* the making of earlier complaints of gender discrimination to the employer and the filing of a charge of discrimination with the EEOC, which charge was pending when the Defendant Employer proceeded with its effort to terminate her employment. The Defendant Employer so proceeded with this disciplinary action because Plaintiff had engaged in such protected activity.

37.  The actions undertaken against Plaintiff, as referred to in Paragraph 36, were undertaken because of gender-based *animus* by certain male personnel with respect to female staff in the employ of the Defendant Employer.   As a result, Plaintiff avers, on information and belief, that officials of Defendant Employer worked in concert to deny her employment opportunities, for reasons of her gender, as well as her readiness to challenge its discriminatory practices, in order to induce the Plaintiff to discontinue her work with the Defendant Employer.

38. In so proceeding on behalf of the Defendant Employer, certain officials of the Defendant Employer, including Defendant Bane, acted with malice deliberately to injure the federally protected interests of Plaintiff.

39. As a direct and proximate result of the Defendant Employer's wrongful acts, Plaintiff has suffered, and will continue to suffer, actual damages, humiliation, embarrassment, as well as such pain and suffering arising from the actions undertaken by certain officials of Defendant Employer to discriminate against her for reasons of her gender and to retaliate against her for having prior challenged the Defendant Employer's discriminatory practices that she was rendered unable to continue her employment with the Defendant Employer.

WHEREFORE, Plaintiff Blubaugh demands judgment against Defendant Employer for compensatory damages of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00), plus legal fees, costs, expenses of suit, and any other relief that the Court or a jury deems proper.

## COUNT II
**(Gender Discrimination for Violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983)**
**(Against Defendant Bane, Individually)**

40. Plaintiff realleges the assertions made in paragraphs 1 through 32 as if these paragraphs had been fully set forth herein.

41. At the time of the events set forth in this Complaint, Defendant Bane was the Sheriff of Harford County.

42. As of May 23, 2012, Plaintiff personally brought to the attention of Defendant Bane her complaints of gender harassment and hostile work environment.  In response, Defendant Bane not only took no action, but proceeded, on his own, to expand upon such harassment with (a) threatened and initiated disciplinary actions against the Plaintiff that had no basis in fact, (b) with threats of termination, subject to her abandoning her earlier filed charges of discrimination, (c) with an initiated termination action leading to a trial board proceeding, and (d) with a

decision, on his own authority, to overrule more lenient recommendations of the trial board determination in order to terminate the Plaintiff's employment with the Defendant Employer.

43. In so proceeding, Defendant Bane was motivated by *animus* against Plaintiff because she was a woman and because she had engaged in activity protected by Title VII and the Equal Protection Clause of the Fourteenth Amendment with the filing of a charge of discrimination for workplace discrimination.

44. The actions undertaken by Defendant Bane against Plaintiff were not justified, as she performed her duties in a manner that merited continuation of her employment in the absence of gender *animus* against her by Defendant Bane.

45. In so proceeding against Plaintiff, as set forth above in Paragraph 29, Defendant Bane acted intentionally with malice, deliberately to injure the federally protected interests of the Plaintiff.

46. In taking the actions described in Paragraphs 41 through 45 above, Defendant Bane acted under color of State law to deprive Plaintiff of her right under the Fourteenth Amendment to equal protection of the law by discriminating against her because of her gender and for retaliation against her for seeking relief from the earlier discrimination, when he participated in sustaining a hostile work environment and in proceeding to terminate Plaintiff's employment.

47. As a direct and proximate result of the Defendant Bane's wrongful acts, Plaintiff has suffered, and will continue to suffer, actual damages, humiliation, embarrassment, as well as such pain and suffering from actions undertaken by Defendant Bane to discriminate against her for reasons of her gender and to retaliate against her for having prior challenged the Defendant Employer's discriminatory practices that she was rendered unable to continue her employment with the Defendant Employer.

WHEREFORE, Plaintiff demands judgment against Defendant Bane for compensatory damages of FOUR HUNDRED THOUSAN DOLLARS ($400,000.00), in addition to punitive damages of ONE MILLION DOLLARS ($1,000,000.00), plus legal fees, costs, expenses of suit, and any other relief that the Court or a jury deems proper.

Respectfully submitted,

/s/
John H. Morris, Jr.
Trial Bar No. 00325
1210 East 33rd Street
Baltimore, Maryland 21218
(410) 366-5683

Attorney for Plaintiff Blubaugh

**REQUEST FOR JURY TRIAL**

Plaintiff, Teresa Blubaugh, by and through the undersigned attorney, hereby requests trial by jury with respect to such portions of his claim as to which he is entitled a jury trial.

/s/
John H. Morris, Jr.