# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| TERESA BLUBAUGH, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO.  JKB-15-1207 |
| HARFORD CNTY. SHERIFF'S OFFICE *et. al.*, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM  AND  ORDER

### I.  Background

Plaintiff Teresa Blubaugh has sued Defendants for alleged gender discrimination and retaliation for engaging in protected activity in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Title VII of the Civil Rights Act of 1964 (as amended by the Civil Rights Act of 1991), 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., St. Gov't § 20-606 (LexisNexis 2014).  (Compl., ECF No. 1.)  Pending before the Court are Defendants' motion to dismiss (ECF No. 6) and Blubaugh's motion to amend the complaint (ECF No. 8).  The motions have been briefed (ECF Nos. 7, 9, 10), and no hearing is required, Local Rule 105.6 (D. Md. 2014).  The motion to dismiss will be denied and the motion to amend will be granted.

### II.  Standard of Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555.

### III.  Standard for Motion to Amend

Within 21 days of the filing of a defendant's motion to dismiss, an amended complaint may be filed as a matter of right, requires no motion, and requires neither consent by the opposing party nor leave of court.  Fed. R. Civ. P. 15(a).  Those are the circumstances here and no motion to amend was required.  Since Blubaugh, however, did file such a motion, it will be granted.  Defendants' objection to the amended complaint is a general assertion of futility but is of no moment because of the timing of Blubaugh's motion to amend.

### IV.  Allegations of the Complaint

The amended complaint only changes the identity of the Employer Defendant from Harford County Sheriff's Office—a nonexistent, nonsuable entity, *see Hines v. French*, 852 A.2d 1047, 1071 (Md. Ct. Spec. App. 2004) (Harford County Sheriff's Office not separate legal entity capable of being sued)—to the Harford County Sheriff.  The current Sheriff is Jeffrey R. Gahler,

who was served with the original complaint and has been participating in the case from the beginning through counsel. Otherwise, the amended complaint is the same as the original, and citations herein will be to the original complaint.

Blubaugh is a white female who was formerly an employee of the Harford County Sheriff (the "Sheriff"); the Sheriff during the time of Blubaugh's employment was L. Jesse Bane, who is now sued in his individual capacity. (Compl. ¶¶ 3-5.) Blubaugh was employed by the Sheriff from 2003 until her employment was terminated effective April 1, 2015, because she was not medically able to continue in her position. (*Id.* ¶ 6.) At the time of her termination, Blubaugh had attained the rank of corporal. (*Id.*)

Prior to her employment with the Sheriff, Blubaugh was in the U.S. Army in the field of counterintelligence. (*Id.* ¶ 7.) After she was honorably discharged, she eventually moved to Maryland. (*Id.*) In 2003, she was employed by the Sheriff as a correctional officer at the Harford County Detention Center. (*Id.* ¶ 8.) From October 2004 to April 2005, she attended the County's law enforcement academy and graduated second in her class. (*Id.*) Thereafter, she received several awards and commendations for her work, which included traffic enforcement, service as a training instructor for field sobriety tests, and criminal investigations, including specific focus on burglaries and child sexual abuse. (*Id.* ¶¶ 9-12.).

In February 2011, Blubaugh was promoted to the rank of corporal and assigned to Shift 3 in the County's Northern Precinct under the supervision of Sgt. Ian Loughran, a white male. (*Id.* ¶¶ 13-14.) Up until that new assignment, Blubaugh's experience in the Sheriff's Office had been generally positive. (*Id.* ¶ 14.) From the beginning of this new assignment, however, Blubaugh was subjected to harassment, hostile work environment, and unfair treatment by Sgt. Loughran because she is female. (*Id.* ¶ 15.) Blubaugh states Sgt. Loughran made inappropriate statements to her based upon her gender and gives as an example his advice to her that it looked "bad for her

3

to be hanging out with the guys because she is female." (*Id.* ¶ 15.)  Blubaugh also alleges, "Sgt. Loughran undermined her on a regular basis, spoke negatively about her to her subordinates, and repeatedly tried to accuse her of doing things wrong when others confirmed that the Plaintiff had done nothing improper." (*Id.*)  "Sgt. Loughran did not treat the male supervisors in this demeaning and professionally limiting way." (*Id.*)  She complained to several superior officers from June 28, 2011, to May 23, 2012. (*Id.* ¶ 16.)

In March 2012, Blubaugh learned that an internal affairs investigation was being conducted against her relating to remarks she purportedly made to her colleagues to support litigation against the Sheriff. (*Id.* ¶ 17.)  Sgt. Loughran was the initiator of the complaint, which was not corroborated by anyone other than him. (*Id.*)  On June 4, 2012, Blubaugh was notified of a second internal affairs investigation against her based upon her response to a domestic violence call on April 26, 2012. (*Id.* ¶ 18.)  On July 6, 2012, she was suspended based on the first internal affairs investigation. (*Id.* ¶ 19.)  On July 11, 2012, she learned of a third internal affairs investigation against her based upon her allegedly untruthful statements during the first internal affairs investigation interview. (*Id.*)  On August 2, 2012, Blubaugh was notified that the allegations underlying the first investigation were "unfounded" but that the third investigation— based upon statements she purportedly made in the interview that occurred in relation to the first investigation—was sustained and that the Sheriff was seeking her termination. (*Id.* ¶ 20.)

Blubaugh requested a trial board adjudicatory hearing to contest the action to terminate her employment. (*Id.*)  She also filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on August 8, 2012. (*Id.* ¶ 22.)  Subsequently, Blubaugh was transferred to three different duty locations and her hours were changed five times, causing her stress and hardship. (*Id.*)  Following the filing of her EEOC charge, several females who were either past or current employees expressed their verbal support to her, told her about their

own experiences of gender discrimination while working for the Sheriff, and told her of their reluctance to file complaints after witnessing the retaliation to which Blubaugh had been subjected. (*Id.*)

The trial board proceeding arose from the second investigation relating to Blubaugh's response to a domestic violence call. (*Id.* ¶ 23.)  She responded on that occasion after two male deputies had already responded to the call. (*Id.*)  Bane faulted Blubaugh for not submitting a written report of the incident and for responding only to remain at the scene to assure the victim's safety while she left the premises. (*Id.*)  Bane sought Blubaugh's termination for these alleged deficiencies in performance, while verbally counseling one of the two male deputies and undertaking no discipline at all against the other male deputy in relation to the same incident. (*Id.*)   Initially, Bane proposed Blubaugh accept a demotion, a letter of reprimand, and reclassification from law enforcement officer to correctional officer; further Bane asked her to drop her pending EEOC complaint. (*Id.* ¶ 24.)  Bane told Blubaugh that if she declined his proposed discipline and she took her case to the trial board, he would seek her termination. (*Id.*)

The trial board was convened on March 14, 2013, and concluded two days later. (*Id.* ¶ 25.)  The Sheriff's own witnesses testified that the prevailing practice in the Sheriff's Office was not to write a report on a domestic violence call unless evidence existed of a physical altercation, visible signs of injury, or indication from the victim that she had been injured from violence by her partner. (*Id.*)  Since the officers observed none of those things, no written report was required. (*Id.*)  Further, the first officer responding to the scene indicated that any responsibility for making the decision whether to write a report fell on him, not the Plaintiff. (*Id.*)

The trial board sustained a ground for discipline against Blubaugh, but recommended the discipline consist of a written reprimand, the loss of two days of leave, and referral to domestic

violence training.  (*Id.* ¶ 26.)   By letter of April 25, 2013, Bane rejected the trial board's recommended penalty and notified Blubaugh he would increase the penalty to termination.  (*Id.* ¶ 27.)   After being so notified, Blubaugh commenced a proceeding for judicial review in state court.   The reviewing judge rendered his opinion on June 2, 2014, and concluded that the Sheriff's decision to terminate Blubaugh was not based on substantial evidence, but was based upon assumption and conjecture and was arbitrary and capricious.  (*Id.* ¶ 28.)   Following the court's decision, the Sheriff reinstated Blubaugh to her earlier position and restored her lost pay due to the wrongful termination.  (*Id.* ¶ 29.)   Despite her reinstatement, Blubaugh was medically unable to resume her career with the Sheriff due to harassment and stress created by the hostile work environment attributable to the Sheriff and Bane.  (*Id.* ¶ 30.)   Effective April 1, 2015, the Sheriff terminated Blubaugh's employment because she was no longer able to perform her job. (*Id.*)

In Count I against the Sheriff, Blubaugh asserts both gender discrimination and retaliation in violation of Title VII and MFEPA.   In Count II against Bane, Blubaugh claims gender discrimination and retaliation under color of state law in violation of the Equal Protection Clause; this count is brought pursuant to 42 U.S.C. § 1983.

## *V. Analysis*

Defendants' motion to dismiss attacked Count I of the original complaint only for Blubaugh's naming the improper party.  (Defs.' Mot. Dismiss Supp. Mem. 5-6, ECF No. 6-1.) With the docketing of the amended complaint, that objection no longer has merit.   In Defendants' reply, they argue, in cursory fashion, that the amended complaint is still defective because suit against the Harford County Sheriff is a suit against the State itself.  (Defs.' Reply 10-11, ECF No. 9.)   Presumably, Defendants mean to rely upon Maryland state law for the

proposition that the Harford County Sheriff is a state official and intend to invoke sovereign immunity in an attempt to dismiss Count I.   However, "sovereign immunity is akin to an affirmative defense, which the defendant bears the burden of demonstrating." *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).   Defendants' one-sentence argument falls far short of that burden.   Moreover, Count I, the only count against the Sheriff, is brought under Title VII and MFEPA.   In 1972, Title VII was amended by Congress to abrogate the States' sovereign immunity.   *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 452-57 (1976) (Eleventh Amendment and state sovereignty it embodies are necessarily limited by enforcement provisions of § 5 of Fourteenth Amendment, pursuant to which Title VII was enacted).   *See also King v. McMillan*, 594 F.3d 301, 308-09 (4th Cir. 2010) ("state law demarcations of particular offices cannot be used to cut off the (federal) Title VII rights of state and local employees").   Thus, the Sheriff may not claim sovereign immunity as to the Title VII claim regardless of whether he might be entitled to sovereign immunity in other contexts.   In addition, to the extent the Sheriff means to claim sovereign immunity to the MFEPA claim, that argument also fails based upon the State's waiver of sovereign immunity in employment discrimination cases brought under MFEPA.   Md. Code Ann., St. Gov't § 20-903 (LexisNexis 2014).   By its terms, the State's waiver is not limited to cases brought in Maryland state courts; instead, it broadly states, "The State, its officers, and its units may not raise sovereign immunity as a defense against an award in an employment discrimination case under this title."   It is reasonable to interpret the statute to apply to any case under the applicable Title 20, regardless of where the case is brought.

Turning to the federal equal protection claim in Count II against Bane in his individual capacity, the Court concludes Blubaugh has plausibly stated a case of gender discrimination against Bane (and against the Sheriff—employing similar analysis in evaluating Count I) based upon Bane's termination of Blubaugh, but not of her male peers, in Blubaugh's and the other

deputies' handling of the domestic violence call.  This is not to say that her other allegations of discrimination may not be valid, but those other allegations are somewhat thin.  Additionally, Blubaugh's complaint easily allows an inference of multiple instances of retaliation against Blubaugh for her engagement in protected activity designed to secure her right to equal treatment under the law.  Bane's own alleged retaliation is highlighted by his apparent initiation of the second (and perhaps, the third) internal affairs investigation after she had complained internally about Sgt. Loughran's allegedly discriminatory treatment of her, as well as Bane's request to Blubaugh to withdraw her EEOC complaint in connection with his offer of a lesser penalty than termination.  Her refusal to comply with that request can plausibly be viewed as the reason Bane pressed ahead with her termination, which was later found to have been arbitrary and capricious. The complaint sufficiently states claims for relief.

Finally, Bane has not persuasively argued that he is entitled to qualified immunity.  This brief argument (Defs.' Mot. Dismiss Supp. Mem. 9) essentially asserts Bane simply exercised his authority to increase Blubaugh's penalty to termination and no facts show he did so in violation of her rights under the Equal Protection clause.  Defendants expand upon the "authority" argument in their reply (Defs.' Reply 8-10), but miss a central point:  The plausible inference under  Blubaugh's complaint is not that Bane had no authority to increase a penalty for discipline but that he used that authority in an impermissible fashion, *i.e.*, to discriminate and to retaliate against Blubaugh based upon her gender and her protected activity.  Bane never argues the law was not clearly established in 2012 and afterward that such a misuse of authority to accomplish discrimination and retaliation was a violation of law, and the Court will not construct that argument for him.  Given the decades of precedent interpreting federal law on this point, the Court concludes Bane is not entitled to qualified immunity.

*VI. Conclusion*

Blubaugh has sought amendment of her complaint as a matter of right, and the Court will direct the Clerk to docket her amended complaint and to ensure the Employer Defendant is correctly reflected as "Harford County Sheriff" rather than "Harford County Sheriff's Office." Defendants' motion to dismiss is unmeritorious and will be denied.

Accordingly, IT IS HEREBY ORDERED:

1. Defendants' motion to dismiss (ECF No. 6) IS DENIED.

2. Plaintiff's motion to amend (ECF No. 8) IS GRANTED.

3. The Clerk SHALL DOCKET ECF No. 8-3 as the Amended Complaint.

4. The Clerk SHALL AMEND the docket to reflect the proper name of the lead Defendant as "Harford County Sheriff."

5. Defendants SHALL ANSWER the Amended Complaint in the time provided by Federal Rule of Civil Procedure 12(a)(4).

DATED this 18th day of December, 2015.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge