IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
|  | * |  |
| **TERESA BLUBAUGH,** | * |  |
| Plaintiff | * |  |
| v. | * | CIVIL NO. JKB-15-1207 |
| **HARFORD COUNTY SHERIFF,** *et al.* | * |  |
| Defendants | * |  |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM

Plaintiff Teresa Blubaugh brought suit against her former employer, the Harford County Sheriff, seeking damages for gender discrimination and retaliation for engaging in protected activity, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Maryland Fair Employment Practices Act ("MFEPA"). (Am. Compl. ¶¶ 33–39, ECF No. 12.) Pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983, Plaintiff also sued L. Jesse Bane ("Bane"), who held the office of Sheriff during the time at which the pertinent events transpired. (*Id.* at ¶¶ 40–47.) This Court previously ruled on Defendants' motion to dismiss, finding Plaintiff had plausibly alleged discrimination and retaliation by Defendants. (Mem. and Order on Defs.' Mot. to Dismiss, ECF No. 11.) Pending before the Court now is Defendants' joint motion for summary judgment (ECF No. 28, 29),[1] which has been fully briefed (ECF Nos. 34, 37, 46, 50), and no hearing is necessary, Local Rule 105.6 (D. Md. 2016). The motion will be granted.

---

[1] Defendants filed a corrected version of their motion for summary judgment (ECF No. 29) to correct typos found in their first version of the same motion (ECF No. 28) without making substantive changes.

I. *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. *Id.*

II. *Background*[2]

Plaintiff is a white female who was employed by the Harford County Sheriff ("the Sheriff") from 2003 until her employment was terminated effective April 1, 2015, because she was not medically able to continue in her position. (Blubaugh Decl. ¶¶ 2–3, ECF No. 34-1.)

---

[2] On this motion for summary judgment, the facts and reasonable, nonspeculative inferences to be drawn therefrom are taken in the light most favorable to the party opposing summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

Prior to her employment with the Sheriff, Plaintiff served as a soldier in the U.S. Army in the field of counterintelligence. (*Id.* at ¶ 4.) She was honorably discharged, moved to Maryland, and, in 2003, was employed by the Sheriff as a correctional officer at the Harford County Detention Center. (*Id.* at ¶¶ 4–5.) She then attended the County's law enforcement academy, graduating in 2003 to become a deputy. (*Id.*)

In February 2011, Plaintiff was promoted to the rank of corporal and assigned to Shift Three in the County's Northern Precinct, where she came under the supervision of Sergeant Ian Loughran, a white male. (*Id.* at ¶¶ 10–11.) Up until that new assignment, Blubaugh's experience in the Sheriff's Office had been generally positive. (*Id.* at 11.) From the beginning of this new assignment, however, Plaintiff experienced a number of conflicts with Loughran, which she attributes to her gender. (*Id.* at ¶ 12.) On one occasion, Loughran reportedly made an inappropriate statement to Plaintiff based on her sex, advising her that "it looks bad for [her] to be hanging out with the guys because [she is] female". (*Id.* at 13.) Plaintiff also provides accounts of numerous incidents in which Loughran:

- Corrected Plaintiff (e.g., after Plaintiff advised a deputy to take a suicidal person to the hospital for an evaluation, Loughran criticized her for incurring medical expenses on the individual and his family);
- Failed to support Plaintiff (e.g., after Plaintiff cited department policy to explain why she decided not to document a particular vehicle-related injury, Loughran told her that her commanding officers were "pissed" at her over the incident); and

- Undermined Plaintiff's authority with respect to her subordinate deputies (e.g., at a meeting, Loughran recognized every other deputy before asking whether Plaintiff, their supervisor, had anything to add).

(*Id.*) Plaintiff alleges that she "never saw Sgt. Loughran treat the male supervisors in this demeaning and professionally limiting way." (*Id.*) Plaintiff complained of Loughran's conduct to Lieutenant Joe Vanseeters on June 28 and August 1, 2011, and to Captain Keith Warner on August 16 and August 30, 2011. (*Id.* at ¶ 14.)

In March 2012, Plaintiff learned that an internal affairs investigation was being conducted concerning remarks she made to her subordinates at a roll call meeting in which she purportedly encouraged them to support litigation against the Sheriff. (*Id.* at ¶ 15.) An anonymous complaint precipitated this investigation, but Loughran subsequently gave a statement to investigators implicating Plaintiff for making her allegedly improper remarks. (Internal Affairs Investigation IA 12-18-I at 36, 45, ECF No. 28-3.)[3] On May 23, 2012, Plaintiff met with Bane to complain about her working relationship with Loughran; Bane responded by assigning Plaintiff to a new supervisor, but keeping both Loughran and her on the same shift.[4] (Blubaugh Decl. ¶¶ 17–19.) On June 4, 2012, Plaintiff was notified of a second internal affairs investigation against her, this one delving into her response to a domestic violence call on April 26, 2012. (*Id.* at ¶ 20.) On July 6, 2012, she was suspended based on the first internal affairs investigation. (*Id.* at ¶ 22.)

On August 2, 2012, Plaintiff was notified that the first investigation had concluded that the statements she made at the roll call meeting were protected speech, but that investigators

---

[3] Two internal affairs investigation reports appear as attachments to the Affidavit of Tracy Martinelli. (ECF No. 28-3.) Because neither includes consecutive pagination, the Court will refer to the page numbers provided by the ECF system.

[4] Plaintiff does not dispute Bane's recollection that plaintiff answered in the negative when Bane directly asked whether she was alleging sexual harassment. (*See* Bane Aff. ¶ 6, ECF No. 28-4.)

nonetheless recommended her termination based on an alleged lack of integrity in her responses to questions put to her during the investigation. (*Id.* at ¶ 23.)[5] Plaintiff requested a trial board hearing to contest the action to terminate her employment.[6] (*Id.*) As far as can be discerned from the record in this case, that trial board hearing never took place.[7]

Plaintiff first contacted the Equal Employment Opportunity Commission ("EEOC") on August 8, 2012 (*Id.* at ¶ 51), but did not formally submit her charge of discrimination through the EEOC until September 1, 2012. (EEOC Charge, ECF No. 28-6.) Notice of that charge was transmitted to the Sheriff's Department on October 11, 2012. (*Id.*)

The second internal affairs investigation grew out of Plaintiff's response to a domestic disturbance call on April 26, 2012. (Internal Affairs Investigation IA 12-20-I(a) at 72, ECF No. 28-3.) On that occasion, Plaintiff arrived on the scene shortly after two male deputies had already responded to the call to find that a woman had locked herself in a bedroom with a young child while her husband remained outside the bedroom. (*Id.* at 86.) The deputies learned that the husband had discovered his wife's involvement in an extramarital affair (*id.* at 84), but despite the husband being visibly angry and the wife complaining of back pain, both spouses denied that any physical violence had taken place (*id.* at 87), and Plaintiff was unable to detect any visible signs of injury on the wife aside from a small red mark on her face (*id.*). Plaintiff concluded that there were no indicators of violence and instructed the deputies not to file a report. (*Id.* at 88.) In explaining her conclusion, Plaintiff noted the husband's military rank, saying, "you don't

---

[5] Plaintiff characterizes the inquiry into her comments at the roll call meeting as a separate investigation from the inquiry into her statements made to investigators carrying out that first inquiry. (Blubaugh Decl. ¶ 22.) However, these events were closely related and the relevant findings are contained in a single report. (IA 12-18-I.) Accordingly, the Court will characterize this as one investigation.

[6] Such a hearing was her right pursuant to Md. Code Ann., Pub. Safety § 3-107 (LexisNexis 2011).

[7] Bane indicates he had determined not to issue any punishment in relation to this internal affairs investigation. (Bane Aff. ¶ 8.) In any event, before charges against Plaintiff were dismissed or the relevant trial board hearing was scheduled, Plaintiff was scheduled for a different trial board hearing pursuant to the findings of a different internal affairs investigation. (Blubaugh Decl. ¶ 25.)

make Master Sergeant by being stupid." (Trial Board T. 298–99, ECF No. 28-7.) Plaintiff would also later elaborate that she did not want to harm the husband's career over an incident for which she did not find him to be at fault. (*Id.* at 299–300.) Later that day, the wife did disclose abuse by her husband to a social worker who took the wife to the hospital where several physical injuries were documented. (Internal Affairs Investigation IA 12-20-I(a) at 83.) While Plaintiff caused no report to be filed, she did update the on-duty supervisor, Liutenant David Betz, about the incident. (Blubaugh Decl. ¶ 28.) Sheriff Bane ordered an internal affairs investigation after receiving complaints from staff at Harford Memorial Hospital and the Harford County State's Attorney's Office. (Bane Aff. ¶ 9, ECF No. 28-4.)

On August 21, 2012, this second internal affairs investigation reached its conclusion, finding that Plaintiff violated department policy and neglected her duty in her failure to report possible domestic violence. (Internal Affairs Investigation IA 12-20-I(a) at 89.) On October 23, 2012, Plaintiff was, through her counsel, offered summary punishment of a demotion in rank, a written reprimand, and reassignment to a position as a correctional officer, with the additional understanding that she would dismiss her pending complaint with the EEOC. (Blubaugh Decl. ¶ 30.) In contrast, one of the deputies on the scene was only provided verbal counseling, and no punishment at all was imposed on the other deputy or on Betz. (Blubaugh Decl. ¶ 25; 2d Martinelli Aff. ¶¶ 3, 4, ECF No. 46-3.)

Rather than accept the offered punishment, Plaintiff elected to contest the investigation's findings before a trial board. (Internal Affairs Investigation IA 12-20-I(a) at 81.) On March 14-15, 2013, the trial board convened and found Plaintiff guilty of neglect of duty, recommending she be given a letter of reprimand, suffer two days' loss of leave, and undergo retraining on domestic violence. (Trial Board Decision 4–5, ECF No. 28-8.) However, Bane

declined this recommendation and instead terminated Plaintiff's employment on April 25, 2013, citing his lack of confidence in her ability to handle domestic violence matters as well as her apparent bias in crediting a suspect's word and character based on his military background. (Bane Letter, ECF No. 28-9.)  Pursuant to the Law Enforcement Officers' Bill of Rights (LEOBR), Md. Code Ann. Pub. Safety § 3-101 et seq. (LexisNexis 2011), Plaintiff challenged her termination in the Circuit Court for Harford County, where, on June 2, 2014, the court found Bane's decision to have been arbitrary and capricious.  (*In re Blubaugh* Mem. Op. 4, 16, ECF No. 46-1.)  Judge Dugan concluded, as a matter of law, that Bane could not find Plaintiff biased based only on reviewing a transcript of her testimony—that such a finding would require his having been present during the relevant testimony.  (*Id.* at 8.)  Accordingly, the court ordered Bane to reinstate Plaintiff with back pay and to re-impose the discipline recommended by the trial board. (*Id.* at 16.)

Bane did not appeal this decision (Bane Aff. ¶ 14), and he ordered Plaintiff's reinstatement.  (Blubaugh Decl. ¶ 35.)  Over the subsequent months, Plaintiff endured several administrative hurdles in her attempts to comply with the requirements of her reinstatement. (Blubaugh Decl. ¶¶ 37–42.)  For example, there were disagreements over the requirement that Plaintiff submit to a polygraph as well as the scope and the scheduling of that examination; there was confusion over the shift and location to which Plaintiff would be assigned; and there were complications over the distribution of Plaintiff's back pay.  (*Id.*)  Simultaneously, Plaintiff began experiencing acute anxiety in connection with reinstatement.  (*Id.* at ¶¶ 43–46.)  Ultimately, pursuant to a diagnosis of Post-Traumatic Stress Disorder, Plaintiff requested retirement on disability, which was approved on May 5, 2015.  (*Id.* at ¶¶ 47-49.)

*III. Analysis*

Within the panoply of incidents and controversies that occurred during the final years of Plaintiff's employment with the Harford County Sheriff's Department, she characterizes her present claims as stemming exclusively from the events surrounding her termination in April of 2013.[8] (Pl.'s Mem. in Opp'n 38, 45, ECF No. 37.) The Court construes Plaintiff's argument to claim her termination amounted to gender-based discrimination and also retaliation for engaging in a protected activity. Plaintiff does not present direct evidence of Bane's discriminatory or retaliatory intent in terminating her, but instead relies on indirect proof to establish her case, which, in this Title VII context,[9] the Court must analyze under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Plaintiff fails to meet her burdens under that framework, and accordingly, the Court will grant summary judgment in favor of the Defendants.

In *McDonnell Douglas*, the Supreme Court established a procedure and assigned burdens of production in cases involving Title VII discrimination claims in which plaintiffs do not provide direct evidence of discrimination: 1) a plaintiff must establish a prima facie case of discrimination, 2) the burden of production then shifts to the defendant/employer to proffer a non-discriminatory reason for the challenged action, and 3) the burden then returns to the plaintiff to show that the defendant's explanations are mere pretext to conceal the true discriminatory motives for the employer's actions. 411 U.S. at 802, 804. The same three steps

---

[8] Plaintiff would have the Court understand those events that transpired before her termination (i.e., her interactions with Loughran) as well as those that took place subsequent to her reinstatement (i.e., the administrative requirements of reinstatement) as providing evidence of the discriminatory or retaliatory animus underlying her termination. (Pl.'s Mem. in Opp'n 38–39).

[9] Plaintiff also pursues causes of action under MFEPA, the Equal Protection Clause, and 42 U.S.C. § 1983. MFEPA is the state law analogue of Title VII, and interpretation of claims under MFEPA is guided by federal cases interpreting Title VII. *Arsham v. Mayor & City Council of Balt.*, 85 F. Supp. 3d 841, 849 (D. Md. 2015). The Equal Protection Clause, in conjunction with § 1983 is a mechanism for holding Bane personally liable for gender discrimination. Accordingly, in this case, neither 42 U.S.C. § 1983 nor MFEPA requires a separate analysis from that under Title VII.

apply when a plaintiff brings a claim of retaliation. *Foster v. Univ. of Md.—E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015).

### A. *Prima Facie Case for Gender Discrimination*

Plaintiff does not present a satisfactory prima facie case for gender discrimination under the first step of the *McDonnell Douglas* framework in that she fails to demonstrate that she was similarly situated to the employees whose punishments she compares to her own.

An employee may establish a prima facie case of employment discrimination by showing that 1) she is a member of a protected class, 2) she performed her job duties in a satisfactory manner, 3) she was subjected to an adverse employment action, and 4) similarly situated individuals outside of her protected class received preferable treatment. *Goode v. Central Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015). To be considered similarly situated, employees must demonstrate comparable performance, qualifications, and conduct, and generally must have dealt with the same decision-maker. *Popo v. Giant Foods LLC*, 675 F. Supp. 2d 583, 589 (D. Md. 2009). When the conduct of an employee exercising a supervisory function is at issue, then any subordinates are, by definition, not similarly situated to the supervisor. *Oguezuonu v. Genesis Health Ventures, Inc.*, 415 F. Supp. 2d 577, 584–85 (D. Md. 2005).

Plaintiff arguably makes a prima facie case for discrimination that satisfies the first three elements,[10] but she fails to identify a fellow employee who truly was similarly situated and who suffered less severe consequences in similar circumstances. She does name three other

---

[10] Plaintiff is alleging discrimination on the basis of gender, and her employment was terminated, thus satisfying the first and third elements. While her termination was premised on a belief that she did not perform her job satisfactorily with respect to the April 26, 2012, domestic disturbance, Plaintiff has challenged the factual basis of that assessment with her statement that she was following standard departmental protocol. (Betz Decl. ¶ 9; Blubaugh Decl. ¶ 31.) Thus, taking the facts in the light most favorable to Plaintiff for the purposes of this motion, the Court must assume that her performance was satisfactory.

employees who had some responsibility in the domestic disturbance incident precipitating her termination and who received less severe discipline than did she: Deputy King, Deputy Palecheck, and Lieutenant Betz. (Morris Decl. ¶ 2, ECF No. 34-2). However, none of these three was in a sufficiently similar position to her to serve as a reasonable standard for comparison. The two deputies on the scene with Plaintiff were her subordinates, and Plaintiff does not challenge Defendants' assertion that Plaintiff instructed them not to file a report.[11] (*See* Defs.' Mem. in Supp. 10, 34; Internal Affairs Investigation IA 12-20-I(a) at 87.) Thus, the deputies manifested different conduct from that of Plaintiff (following an order not to write a report versus issuing such an order) and were subject to a different standard (subordinate versus supervisor). As for Plaintiff's shift supervisor, he was not on the scene, and his ability to assess the evidence of violence or the overall seriousness of the situation was wholly controlled by Plaintiff. (Betz Decl. ¶ 7–8, ECF No. 34-2.) Therefore, the Court does not find Plaintiff was similarly situated to any of these other employees, and consequently, she has failed to state a prima facie case that her termination was discriminatory.

### B. *Prima Facie Case of Retaliation*

While Plaintiff comes somewhat closer on her claim that she was a victim of a retaliatory—as opposed to a discriminatory—termination, the Court cannot find that Plaintiff has made a prima facie case on that claim because she fails to establish causation between her protected activity and her employer's adverse action against her.

To show a prima facie case of retaliation, a plaintiff must show that 1) she engaged in protected activity, 2) the employer took an adverse action against her, and 3) there was a causal relationship between her protected activity and the adverse action. *Foster*, 787 F.3d at 250.

---

[11] Bane relies on this supervisor/subordinate distinction to explain, in part, why Plaintiff received more severe discipline than did her subordinate deputies. (Bane Aff. ¶ 10.)

Protected activities include participation in an investigation or proceeding conducted pursuant to Title VII as well as opposition to any practice prohibited by Title VII. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). The causation element of a retaliation claim does not require the plaintiff to establish strict, "but-for" causation as part of her prima facie case. *Foster*, 787 F.3d at 251–52 (holding that the causation standard required to establish a prima facie case of retaliation at step one of a *McDonnell Douglas* analysis is less onerous than that required to demonstrate pretext at step three, at which point a plaintiff must be able to establish "both that the employer's reason was false and that retaliation was the real reason for the challenged conduct"). The fact that a plaintiff experienced an adverse employment action shortly after the employer learned the plaintiff engaged in a protected activity may, by itself, create an inference of causation sufficient to establish a prima facie case, but only if "the temporal proximity [is] very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (finding a three-month period insufficient to support an inference of causation); *Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 485 (D. Md. 2015) ("Although there is no bright-line rule on the issue of temporal proximity, the Fourth Circuit has held that a lapse of over three months between the protected activity and the alleged retaliation is too long to give rise to an inference of causality.").

Plaintiff's initiation of a complaint with the EEOC was a protected activity, and her termination amounts to an adverse employment action, but she fails to demonstrate a causal relationship between the two. While the fact that Bane terminated Plaintiff's employment after receiving notice that she had filed a complaint with the EEOC is itself evidence of causation, the passage of six months between those events is too long to infer causation without further factual support. The Amended Complaint indicated that the Sheriff's Department had asked Plaintiff to

withdraw her EEOC complaint and threatened to seek her termination if she did not. (Amended Complaint ¶ 24.) Thus, in ruling on Defendants' motion to dismiss, the Court opined that the demand could constitute evidence of retaliation. (Mem. and Order on Defs.' Mot. to Dismiss 8.) However, the record now indicates that the offer in question was part of an attempted negotiated settlement in which both sides were communicating through counsel. (Blubaugh Decl. ¶ 30.) Such evidence is inadmissible in evaluating a summary judgment motion. Fed. R. Evid. 408; Fed R. Civ. P. 56(c)(2). Thus, there is insufficient evidence to infer that Bane's knowledge of Plaintiff's EEOC complaint caused him to terminate her employment.

Plaintiff argues that her previous internal complaints were additional protected activity for which her termination was retaliatory, but again, the record does not support such a conclusion. First of all, Plaintiff has not challenged Bane's assertion that Plaintiff denied she was making a claim of gender discrimination when she complained to him about Loughran's behavior. (Bane Aff. ¶ 6, 7.) Therefore, that complaint was not a protected activity under Title VII. By contrast, Plaintiff does claim that she alleged gender discrimination in her earlier complaints to Lieutenant Vanseeters and Captain Warner.[12] (Blubaugh Decl. ¶ 18.) However, it was Bane who effected her termination, and Plaintiff cannot reasonably impute to Bane knowledge that her complaints to Vanseeters and Warner were for gender-based discrimination if she subsequently denied making such allegations in her conversation with Bane. Furthermore, Plaintiff's complaints to Vanseeters and Warner came eighteen to twenty months prior to her termination, making them too far removed to infer a causal connection. Thus, none of these internal complaints support a prima facie case for a retaliatory termination.

---

[12] The parties dispute whether Plaintiff alleged any gender discrimination in her complaints to Vanseeters and Warner (*Compare* Blubaugh Decl. ¶ 18 *with* Defs.' Reply Mem. 10, ECF No. 46), but in reviewing this motion for summary judgment, the Court views the facts in the light most favorable to the Plaintiff.

Because Plaintiff has failed to meet her burden of establishing a prima facie case that her termination was the product of discrimination or retaliation, the Court will grant summary judgment in favor of the Defendants.

### C. *Legitimate, Non-discriminatory / Non-retaliatory Reasons for Action*

Even if the Court were to find that Plaintiff made a prima facie case of discrimination or retaliation, Defendants' non-discriminatory, non-retaliatory explanations for Bane's decision to terminate Plaintiff's employment meet Defendants' burden under the second step of a *McDonnell Douglas* analysis. Contrary to Plaintiff's assertion, elaborated below, Defendants are free to proffer such explanations, and it is appropriate for the Court to consider them.

Defendants have introduced evidence demonstrating multiple, mutually compatible explanations for Bane's decision to terminate Plaintiff's employment that were non-discriminatory and non-retaliatory. First, Bane found Plaintiff to have demonstrated a bias in favor of a suspect because of his military rank. (Bane Letter, ECF No. 28-9.) Second, Plaintiff's actions damaged the reputation of the Sheriff's Department. (*Id.*) Third, Plaintiff was a supervisor and therefore held to a high standard of accountability. (Bane Aff. ¶ 10.) Finally, domestic violence is a law enforcement issue of particular concern to Bane. (*Id.* at ¶ 12; Bane Letter.) These explanations, which are neither discriminatory nor retaliatory, satisfy Defendant's obligation under the second step of *McDonnell Douglas*.

Plaintiff would have the Court ignore Defendant's proffered legitimate explanations for her termination, arguing that the finding of the Circuit Court for Harford County (i.e., that Bane's action was arbitrary and capricious) precludes Defendants from attempting to meet their burden. (Pl.'s Mem. in Opp'n 53, n.19, ECF No. 37.) Such an argument is severely flawed.

Collateral estoppel prevents relitigation of an issue of fact that was already subject to a final decision on the merits in a previous judicial proceeding based on a different cause of action between the same parties. *See Crane v. Puller*, 899 A.2d 879, 891–95 (Md. Ct. Spec. App. 2006); *see also Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 479–80 (1982) (applying collateral estoppel to prevent a Title VII claim in federal court where a state appellate court previously found no violation of a state anti-discrimination statute, and the plaintiff could not succeed on the federal cause of action without contradicting the factual finding under the state claim).

Judge Dugan in the Circuit Court for Harford County considered Plaintiff's claim of wrongful termination under the LEOBR. (*In re Blubaugh* Mem. Op. 4–5.) Bane's justification for Plaintiff's termination was based in large part on the bias he perceived in her professional judgment, but the court determined, as a matter of law, that Bane could not find Plaintiff biased based on review of a sterile transcript of her testimony without being present to observe her demeanor. (*Id.* at 8.) Accordingly, the court found Bane's action to be arbitrary and capricious. (*Id.* at 16.) However, Title VII does not protect against all arbitrary and capricious action, but only against actions that discriminate against a protected class or retaliate against someone for exercising her statutory rights. 42 U.S.C. §§ 2000e-2–2000e-3 (2016). Thus, Bane's apparent violation of the LEOBR, arbitrary or not, has no bearing on his liability under Title VII. Because Judge Dugan did not find Bane to have acted with either discriminatory or retaliatory intent, Defendants are not estopped from arguing in the instant case that Bane's actions were non-discriminatory and non-retaliatory.

### D. *Demonstration of Pretext*

If a case advances to the final step of a *McDonnell Douglas* analysis, it is the plaintiff's burden to demonstrate pretext in the defendant's proffered non-retaliatory, non-discriminatory

14

explanations for the contested employment actions. *Foster*, 787 F.3d at 250. In a retaliation case, the plaintiff must establish "both that the employer's reason was false and that retaliation was the real reason for the challenged conduct." *Id.* at 252.

In the instant case, even if the Court were to find that Plaintiff made a prima facie case of retaliation or discrimination, she has not attempted to show pretext in Defendant's explanations for her termination. Instead, she relies on her position that her burden is obviated by the Circuit Court of Harford County's finding that Bane's action was arbitrary and capricious. (Pl.'s Mem. in Opp'n 53 n. 19.) For the reasons discussed above, Plaintiff's analysis is in error, and thus her burden is unmet. Because Defendants have offered non-discriminatory, non-retaliatory explanations for her termination, and because Plaintiff has failed to meet her burden to demonstrate pretext in those explanations, summary judgment for the Defendants would be appropriate even if Plaintiff had presented a prima facie case of discrimination or retaliation.

Given the Court's conclusions on the failure of proof by Plaintiff, it need not reach Defendants' other arguments.

## IV. Conclusion

For the foregoing reasons, the Court concludes no genuine dispute of material fact exists, and Defendants are entitled to summary judgment as a matter of law. A separate order will issue granting summary judgment in favor of all Defendants on all counts.

DATED this 16th day of December, 2016.

BY THE COURT:

/s/
James K. Bredar
United States District Judge